UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CITY OF SAN JOSE,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY, et al.,<br><br>   Defendants. | Case No. 5:15-cv-03178-EJD<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. No. 65 |
| CITY OF OAKLAND,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY, et al.,<br><br>   Defendants. | Case No. 5:15-cv-05152-EJD<br><br>Re: Dkt. No. 49 |
| CITY OF BERKELEY,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY, et al.,<br><br>   Defendants. | Case No. 5:16-cv-00071-EJD<br><br>Re: Dkt. No. 39 |

   In these related actions, Plaintiffs City of San Jose, City of Oakland, and City of Berkeley (collectively, "the Cities") seek damages from Defendants Monsanto Company ("Monsanto"), Solutia Inc., and Pharmacia Corporation (collectively, "Defendants") because, between the 1930s and the late 1970s, Monsanto manufactured and sold products containing environmental

1
Case Nos.: 5:15-cv-03178-EJD, 5:15-cv-05152-EJD, 5:16-cv-00071-EJD
ORDER GRANTING MOTIONS TO DISMISS

contaminants called polychlorinated biphenyls ("PCBs"). The Cities allege that these PCBs have contaminated and continue to contaminate the San Francisco Bay ("the Bay") through runoff from the Cities, forcing them to spend money to reduce PCB discharge and comply with state and federal regulatory requirements.

Presently before the Court are Defendants' motions to dismiss Plaintiffs' complaints. Case No. 15-cv-3178, Dkt. No. 65; Case No. 15-cv-5152, Dkt. No. 49; Case No. 16-cv-0071, Dkt. No. 39 (collectively, "Mot."). Pursuant to the Court's previous order, the Cities have filed a single joint opposition to the motions. Case No. 15-cv-3178, Dkt. No. 75 ("Opp."). The parties appeared for hearing on the motions on August 9, 2016. Case No. 15-cv-3178, Dkt. No. 81; Case No. 15-cv-5152, Dkt. No. 64; Case No. 16-cv-0071, Dkt. No. 54. After carefully considering the parties' arguments, the Court finds that the Cities have failed to state a claim justifying relief. For the reasons set forth in further detail below, the motion to dismiss is GRANTED.

## I.     BACKGROUND

Each of the Cities raises nearly identical allegations its complaint. Case No. 15-cv-3178, Dkt. No. 1; Case No. 15-cv-5152, Dkt. No. 1; Case No. 16-cv-0071, Dkt. No. 1 ("Compls."). PCBs, the Cities allege, are man-made chemical compounds that have become notorious as global environmental contaminants. Id., ¶ 1. PCB exposure can cause a number of health issues, including cancer, in humans, and PCBs also destroy populations of fish, birds, and other animal life. Id., ¶¶s 2, 4, 36-46. PCBs were used in a variety of applications, such as paint, caulking, electrical equipment, sealants, inks, lubricants, and other products. Id., ¶¶s 5, 33.

The Cities operate their own municipal stormwater systems, which collect stormwater and discharge it into the Bay. Id., ¶ 13. When it rains, PCBs often leach into stormwater and rainwater. Id., ¶¶s 5, 35. Thus, through no fault of their own, the Cities discharge PCBs into the Bay. Id., ¶¶s 5-6. As a result, the Bay has become contaminated with PCBs, and the United States Environmental Protection Agency ("EPA") has approved a PCB Total Maximum Daily Load ("TMDL") for the Bay, meaning the maximum amount of PCBs that the Bay can receive while still meeting water quality standards. Id., ¶¶s 7-10.

Because they discharge stormwater into the Bay, the Cities are required to obtain Municipal Regional Stormwater Permits from the San Francisco Bay Regional Water Quality Control Board. Id., ¶ 13. Each of the Cities has received such a permit, which includes a TMDL that limits the amount of PCBs the Cities may discharge into the Bay through stormwater. Id., ¶¶s 14-15. On May 11, 2015, a new draft permit, which would govern the next permitting period, was issued, which imposed even stricter TMDLs and would cost the Cities even more money to reduce their PCB discharge. Id., ¶¶s 18-19.

From 1935 until Congress banned PCBs in 1979, the company then known as Monsanto Corporation ("Old Monsanto") was the sole manufacturer of PCBs in the United States. Id., ¶¶s 3, 32.[1] As early as the 1930s, Old Monsanto was aware that PCBs were toxic to humans and wildlife. Id., ¶¶s 47-55, 57, 59. By the early 1970s, Old Monsanto also had learned that PCBs were persistent and ubiquitous and could cause lasting harm. Id., ¶¶s 57-58, 61-62. Also in the early 1970s, the EPA began to research the effects of PCBs, issuing a report about their toxicity and finding that they were widespread in California bodies of water. Id., ¶¶s 66-68. Nevertheless, reluctant to stop selling a profitable product, Old Monsanto continued to develop and market products containing PCBs, and actively concealed their harmful effects from state and federal regulatory agencies. Id., ¶¶s 60, 62-64, 69-71, 73-76.

On the basis of these allegations, the Cities raise two causes of action: (1) public nuisance by manufacturing, distributing, marketing, and promoting PCBs that have harmed the Bay; and (2) equitable indemnity for the damage caused to the Cities. Id., ¶¶s 77-96. They seek compensatory damages, punitive damages, and attorney's fees, as well as other relief. Id. at 19. Defendants have moved to dismiss both causes of action by each of the Cities. Mot. Plaintiffs oppose all of Defendants' motions. Opp.

---

[1] Old Monsanto was spun off into three corporations, all of which are Defendants here. Compls., ¶¶s 24-27.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party. Autotel v. Nev. Bell Tel. Co., 697 F.3d 846, 850 (9th Cir. 2012) (citation omitted). When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

The court must accept as true all "well-pleaded factual allegations" in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Nor is a complaint sufficient if it merely "tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). In other words, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give

fair notice and to enable the opposing party to defend itself effectively." Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)). "In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'" Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (alteration in original) (quoting Eclectic Props. E., 751 F.3d at 996).

In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). A district court may dismiss without leave to amend "where the amendment would be futile." Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009) (citing Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004)).

## III.  DISCUSSION

As above, Defendants move to dismiss both claims that the Cities have brought. The Court considers each claim in turn.

### A.  Public Nuisance

Under California law, a nuisance is "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin." Cal. Civ. Code § 3479. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . . ." Id. § 3480.

California permits two types of nuisance actions. First, "[a] civil action may be brought in the name of the people of the State of California to abate a public nuisance . . . by the city attorney of any town or city in which the nuisance exists." Cal. Civ. Proc. Code § 731. Second, "any person whose property is injuriously affected, or whose personal enjoyment is lessened by a

nuisance," may bring a civil action for abatement of the nuisance as well as damages. Id. A public entity may bring the latter type of action if it "can show it has a property interest injuriously affected by the nuisance." County of Santa Clara v. Atl. Richfield Co., 137 Cal. App. 4th 292, 314 (2006) (quoting Selma Pressure Treating Co. v. Osmose Wood Preserving Co., 221 Cal. App. 3d 1601, 1616 (1990), overruled on other grounds by Johnson v. Am. Standard, Inc., 43 Cal. 4th 56, 70 (2008)).

Here, the Cities allege only the second type of nuisance. Opp. at 6. Defendants respond that (1) the Cities may not assert the public nuisance claim because none of their property has been affected; (2) Defendants, as mere product manufacturers, played no active or intentional rule in creating the alleged nuisance; (3) the intervening acts of the third parties who purchased and used the products break the chain of proximate causation; and (4) Defendants cannot be held liable for regulatory compliance costs as damages. Because the Cities have failed to establish that their property was affected, the Court does not reach the remaining issues.

As above, a public entity may bring a non-representative nuisance action for damages only if "it has a property interest injuriously affected by the nuisance." Santa Clara, 137 Cal. App. 4th at 314 (quoting Selma Pressure, 221 Cal. App. 3d at 1616).[2] The Cities claim such a property interest not in the Bay itself, but in stormwater that has been polluted by Monsanto's PCB products because the Cities are responsible for collecting stormwater and managing its discharge into the Bay. Opp. at 11-12.[3]

---

[2] Plaintiffs also suggest that a municipality may bring an action to recover monetary damages if it establishes a "special injury" to the municipality. Santa Clara, 137 Cal. App. 4th at 307 n.6 (quoting Cal. Civ. Code § 3493; Frost v. City of Los Angeles, 181 Cal. 22, 24-25 (1919)). The quoted language in Santa Clara, however, is dictum, and both authorities cited refer only to "private person[s]." Cal. Civ. Code § 3493; Frost, 181 Cal. at 24-25. Meanwhile, courts that have directly addressed the issue have held that the existence of a "special injury" confers standing only on private persons and not public entities. Torrance Redevelopment Agency v. Solvent Coating Co., 763 F. Supp. 1060, 1065 (C.D. Cal. 1991); City of Los Angeles v. Shpegel-Dimsey, Inc., 198 Cal. App. 3d 1009, 1020 (1988). In keeping with the weight of authority, this Court also holds that the special injury requirement of Cal. Civ. Code § 3493 does not apply to public entities. The Court therefore does not address Plaintiffs' argument that they have suffered a special injury.

[3] At the hearing on this motion, the Cities clarified for the first time that they claim regulatory and usufructuary interests in stormwater. This contention does not appear in their briefs. In fact, the

In support of this contention, the Cities cite Orange County Water District v. Arnold Engineering Co., 196 Cal. App. 4th 1110 (2011).  In Orange County, the public entity plaintiff, the Orange County Water District ("Water District"), brought five causes of action, including one for public nuisance and several more under various statutes, seeking damages for groundwater contamination resulting from the defendant's dumping of hazardous waste.  Id. at 1115-16.  The defendants moved to disqualify the Water District's law firm when the defendants discovered that the firm represented the Water District under a contingency fee agreement, an arrangement that is not allowed for actions on the public's behalf.  Id. at 1116 (citing People ex rel. Clancy v. Superior Court, 39 Cal. 3d 740, 750 (1985)).  The Orange County court held that the Water District had not sued on the public's behalf because the Water District primarily sought monetary damages.  Id. at 1125-26.

The Cities highlight one sentence in the Orange County opinion: "Indeed, regardless whether the Water District's interest in the groundwater is classified as regulatory, proprietary, or usufructuary, the Water District is entitled to recover monetary damages for the investigation and remediation costs it incurred and will incur in the future."  Id. at 1126 (footnote omitted).  In context, however, this sentence does not support the Cities' position.  The opinion goes on to explain that "both the [Uncodified Orange County Water District] Act and [Cal. Health & Safety Code §25363(e)] authorize the Water District to bring an action in its own name to recover investigation and remediation costs it incurred without regard to the particular interest the Water District holds in the contaminated groundwater."  Id.  In other words, in Orange County, other statutory causes of action expressly allowed the public entity to recover damages incurred in investigating and remediating contamination.  The Orange County court therefore did not need to decide whether the Water District had a proprietary interest in its groundwater for purposes of its nuisance claim.  The Cities cite no other authority for their claim that they have a property interest

---

nuisance claims in the Cities' complaints do not mention stormwater management systems at all and refer only to the Bay itself.  Compls., ¶¶s 78-90.

in stormwater.

On the other hand, Defendants point to a state statutory framework that suggests that stormwater belongs to the state of California. Under Cal. Water Code § 1201, "[a]ll water flowing in any natural channel," unless appropriated or used, is "public water of the State." Of course, stormwater drainage systems are not natural channels under § 1201. However, Cal. Water Code § 10574 clarifies that "[u]se of rainwater collected from rooftops does not require a water right permit pursuant to Section 1201." By exempting rainwater from the permitting requirement of § 1201, § 10574 implies that rainwater otherwise falls within § 1201, meaning that rainwater is public water belonging to the state. The Cities do not take ownership of stormwater merely because it flows through municipal pipes on its way to the Bay. Cf. Cal. Water Code § 1202(d) (classifying as "unappropriated water" "[w]ater which having been appropriated or used flows back into a stream, lake, or other body of water").

In sum, the Cities have failed to "establish[] a property interest the nuisance injuriously affected." Orange County, 196 Cal. App. 4th at 1125 n.4 (citations omitted). Therefore, they cannot pursue nuisance claims for damages. Because the Cities cannot meet this threshold requirement, the Court need not address the remaining issues that Defendants have raised. The nuisance claims will be dismissed.

The only remaining question is whether to grant the Cities leave to amend their nuisance claims. The Cities have not yet had an opportunity to amend their complaints. As noted above, their complaints and briefing are not altogether clear on precisely what property interest they claim or why they have such a property interest. In light of this ambiguity, the Court cannot yet conclude that further amendment of the nuisance claims would be futile. Leave to amend these claims will be granted. See DeSoto, 957 F.2d at 658.

### B. Equitable Indemnity

In California, "[t]he equitable indemnity rule enables a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." Gen. Motors Corp. v. Duopnik, 1 F.3d 862, 866 (9th Cir. 1993) (citing Am. Motorcycle Ass'n, 20 Cal. 3d 578,

8
Case Nos.: 5:15-cv-03178-EJD, 5:15-cv-05152-EJD, 5:16-cv-00071-EJD
ORDER GRANTING MOTIONS TO DISMISS

598 (1978)). The purpose of equitable indemnity is to apportion monetary loss "between . . . wrongdoers in proportion to their relative culpability." Selma Pressure, 221 Cal. App. 3d at 1611-12 (quoting Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 448, 495 (1985)).

"Joint and several liability is a prerequisite for equitable indemnity." Leko v. Cornerstone Bldg. Inspection Serv., 86 Cal. App. 4th 1109, 1115 (2001) (citing Yamaha Motor Corp. v. Paseman, 219 Cal. App. 3d 958, 964 (1990)). It is not necessary that the responsible parties "act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants." Selma Pressure, 221 Cal. App. 3d at 1612 (emphasis omitted) (quoting Cicone v. URS Corp., 183 Cal. App. 3d 194, 212 (1986)). However, "a cause of action for indemnity does not accrue until the indemnitee suffers loss through payment of an adverse judgment or settlement." City of San Diego v. U.S. Gypsum Co., 30 Cal. App. 4th 575, 587 (1994) (citing Valley Circle Estates v. VTN Consol., Inc., 33 Cal. 3d 604, 611 (1983); People ex rel. Dep't of Transp. v. Superior Court, 26 Cal. 3d 744, 748 (1980)).

The Cities contend that they and Monsanto are jointly responsible in the contamination of the Bay because the Cities have been required to spend money to reduce the levels of PCB contamination in stormwater they have released into the Bay. Compls., ¶ 82. However, as Defendants point out, the Cities have had to pay because of a regulatory requirement, not an adverse judgment. And although it may be true that the State of California could bring a public nuisance action against the Cities, an equitable indemnity cause of action is premature unless and until the State does so and obtains a judgment or settlement. The equitable indemnity causes of action will be dismissed. Furthermore, because no amendment could cure this defect in the claim, leave to amend will be denied. Gardner, 563 F.3d at 990.

**IV.   ORDER**

The motions to dismiss are GRANTED. Leave to amend is GRANTED only as to the Cities' nuisance causes of action. Any amended complaints shall be filed on or before **September 13, 2016**.

**IT IS SO ORDERED.**

Dated: August 22, 2016

_____
EDWARD J. DAVILA
United States District Judge